**David JASSO, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–81–401–CR.**

Court of Appeals of Texas, Corpus Christi.

January 27, 1983.

Walter Boyd, John Gilmore, Bonilla, Read, Bonilla & Berlanga, Inc., Corpus Christi, for appellant.

Tom Bridges, Dist. Atty., Sinton, for appellee.

Before NYE, C.J., and UTTER and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This is an appeal from a conviction by a jury for aggravated assault. Among other things, appellant contends that it was error for the court to exclude testimony that the State's main witness asked a defense witness to give false testimony. We reverse and remand.

In a two count indictment, appellant was charged with attempted murder and aggravated assault. The facts which gave rise to this indictment are as follows:

Appellant shot one Adolph S. Rodriguez twice, once in the leg and another shot in the stomach.. In a voluntary statement, appellant said that on Friday, January 30, 1981, while he was drinking at a bar, he had

a conversation with Rodriguez wherein Rodriguez shared with him that he was very upset and depressed because his father-in-law had fired him from his job and his wife had filed for a divorce. Rodriguez told appellant that he could not cope with the situation and therefore on Monday, he was going to commit suicide and he was also going to shoot his wife and his father-in-law. Rodriguez also told appellant that he owned a .44 Magnum pistol. Appellant stated in his confession that he tried to talk Rodriguez out of shooting Robin (Rodriguez's wife) and her father but that Rodriguez said that he had to do it and that he needed a couple of days to get his things in order. (Robin was also appellant's ex-wife). After Rodriguez left the bar, appellant called Robin and told her of this conversation. Robin told appellant that Rodriguez had been threatening her and that she did not know what to do.

The next morning, appellant saw Robin at a grocery store and she asked appellant to go to her house.

At approximately 2:30 p.m., Rodriguez called and wanted to talk to Robin. Appellant answered the phone and it appeared to him that Rodriguez had been drinking. Appellant told Rodriguez that Robin did not want to speak to him and admonished Rodriguez not to bother her. A few minutes later, Rodriguez called again and asked to talk to Robin. Appellant told him that he couldn't and Rodriguez responded that he would be there in a little while. At approximately 5:00 p.m., Rodriguez arrived at the mobile home.[1] Appellant took a .38 caliber revolver from inside the home and put it in his pocket. Rodriguez walked up to the front porch and was met by appellant who told him that he couldn't come in. Rodriguez attempted to enter the home and during the scuffle Rodriguez put his hand in his pant pocket. At that point, appellant pulled the pistol from his pocket and shot Rodriguez in the leg. Rodriguez continued to come toward appellant and appellant

shot him a second time. Appellant did not testify but all of the evidence was before the jury through appellant's confession. Robin did not testify at the trial.

Rodriguez's version of the facts is quite different. He testified that on January 31, 1981, the day of the shooting, he had been drinking and that between the hours of 11:00 a.m. and 5:00 p.m. he had approximately nine (9) beers. He further stated that his father-in-law had fired him and shortly after that his wife filed for divorce. Rodriguez denied telling appellant or anybody else that he was going to kill Robin and her father but did admit telling appellant that he intended to commit suicide. He further denied telling appellant that he had a .44 Magnum pistol.

After the State rested its case, Leroy Casanova was called as a witness by the appellant. Casanova testified that a day before the shooting he met Rodriguez at a tavern and Rodriguez mentioned owning a .44 Magnum and that he was going to take his own life on Monday at midnight. During the conversation, Rodriguez told Casanova that he also "was going to take Robin and the old man Green, ... with him." However, before Casanova testified, Rodriguez approached Casanova and said "Tell them you don't know anything." Appellant attempted to get this testimony before the jury but the court sustained the State's objection to the testimony. Appellant properly preserved the matter by a bill of exception.

The Court of Criminal Appeals has stated many times that great latitude should be allowed a defendant in showing *any* fact which would tend to establish ill feelings, bias, animus upon the part of any witness testifying against him. *Castro v. State*, 562 S.W.2d 252 (Tex.Cr.App.1978).

"In *Blair v. State* [511 S.W.2d 277] [Tex. Cr.App.] supra, we stated that any possible malice, bias or prejudice towards the defendant on the part of the witness is admissible to attack his credibility and to

---

1. The mobile home was parked in five acres out in the country. The mobile home and the land were owned by Robin's father.

lay the groundwork for possible impeachment. The motives which operate on the mind of a witness when he testifies are never regarded as immaterial or collateral matters. The defendant may prove facts "which tend to show bias, interest, prejudice or any other mental state· or status which fairly construed might tend to affect his credibility." *Castro,* Id. at 256.

One commentator has written:

"Any conduct on the part of the witness with reference to the case which indicates a willingness to interfere with the discovery of truth either by fabricating false testimony or supressing true testimony may be shown to affect his credibility. Such conduct is on a par with that indicating bias. It includes such acts and statements as: (1) statement indicating a willingness or intention to give false testimony, (2) an offer to furnish false testimony, (3) actual fabrication of testimony, (4) accepting money for testimony, (5) attempt to corrupt other witnesses or cause them to evade the process of the court, and (6) an attempt by a witness to conceal the fact that he was a material witness." McCormick & Ray, Texas Law of Evidence § 678 (Texas Practice 2d ed. 1956).

In the instant case, Rodriguez portrayed himself as an innocent victim who, without provocation, was shot twice by a man who was interfering with his right to pick up his clothes from his home after a domestic squabble. Rodriguez's credibility was certainly at issue and the fact that he asked a witness to perjure himself may affect his credibility and the jury was entitled to consider it for whatever it was worth. It was error to exclude it and since the jury rejected appellant's self-defense claim, it cannot be said that the error was harmless beyond a reasonable doubt. Appellant's eighth ground of error is sustained.

In view of our disposition of the appeal, it is not necessary to write on the remaining grounds of error. Suffice it to say that they are without merit.

The judgment of the trial court is reversed and remanded.