**Arthur David BLAIR, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Charles David BLAIR, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 48428 and 48429.**

Court of Criminal Appeals of Texas.

July 2, 1974.

Vincent W. Perini, Dallas, for appellant.

Henry Wade, Dist. Atty. and John H. Hagler, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

The appellants were convicted of aggravated assault on a peace officer. Charles David Blair was assessed a punishment of thirty (30) days' confinement in jail, and Arthur David Blair was assessed a punishment of one (1) year in jail and a fine of $500.00.

The State's evidence at best reflects that Detective Dennis Hosea of the Irving Police Department was employed during his off-duty hours as a security officer at the Spanish Oaks Apartments, where he lived. On April 8, 1972, at approximately 8 p.m., Hosea was called and instructed to go to apartment #233 to quiet some people who were making excessive noise. The officer testified that as he approached the apartment he heard "loud talking, laughing and cursing." After being admitted into the apartment, Hosea indentified himself as the security guard for the apartments and stated that he had received a call from the assistant manager about several complaints of the loud noise and requested the boisterous group to "hold it down a little bit." Charles Blair then told the officer to leave the apartment, and that if he returned to bring the police. Hosea then informed the group that he was an Irving Police Officer and produced his identification card as proof thereof. Appellant Arthur Blair then asked to see his credentials, and, upon the officer's refusal to tender his wallet to the defendant, the occupants advanced towards the officer, blocked the doorway, and began beating him and forced him out of the apartment in an attempt to throw the complainant over the breezeway.

After managing to escape from the threesome, Hosea was again confronted by appellant Charles Blair, who was subsequently placed under arrest that evening.

At the outset the appellants challenge the trial court's granting of a motion in limine filed by the State which would not permit them to prove up the beating of the appellant Charles Blair by peace officers on the following night in order to show the animus, motive, bias, ill-feeling, etc., of the arresting officer who testified for the State. ,

Prior to the trial the court granted the State's motion to prevent the appellants from mentioning any injuries the appellant Charles Blair may have received without first obtaining the court's permission to do so.

· Appellants properly preserved their objections to the court's ruling and offered co-defendant Charles Blair's testimony outside the presence of the jury.

Charles Blair testified that, after posting bail the following day, he was with his pregnant wife at the apartment when Irving Police Sergeant McQuinn kicked the door open and came into the apartment with his pistol drawn and pointed directly at the appellant. Closely behind the sergeant were two other officers, one of whom was the complaining witness in the instant case. After searching the appellant, McQuinn grabbed appellant's wife's purse and began searching through it. When she asked him what he was doing there, McQuinn slung the purse across the room, spilling its contents on the floor, and told her to "shut up." The officers then escorted Blair into the bedroom, where Sergeant McQuinn struck appellant in the mouth and asked him where his father and uncle were and what kind of car they drove. Blair further testified that he told the group, "Well, if you are going to kill me, why don't you go ahead and do it?" Hosea then stepped in front of the group and stated, "Don't worry, if we do you will be found with a gun in your possession." After telling the officers all he knew, the group left the residence.

Appellants contend that the excluded evidence bore heavily on the question of the complaining officer's bias in assessing his credibility as a witness. We agree. The jury's duty in this case came down to the issue of whom they chose to believe, the appellants or the police officer. The police officer's credibility was all important; any possible malice, bias or prejudice towards the appellants would be admissible to attack his credibility to lay the groundwork for possible impeachment of the officer.

Further, as stated in 1 Branch's Ann.P.C., 2d ed., Sec. 185, p. 192.

"The motives which operate upon the mind of a witness when he testifies are never regarded as immaterial or collateral matters. The adverse party may prove declarations of a witness which tend to show bias, interest, prejudice, or any other mental state or status which fairly construed might tend to affect his credibility."

And, as we stated in Wood v. State, 486 S.W.2d 359 (Tex.Cr.App.1972), great latitude should be allowed the accused in showing *any fact* which would tend to establish ill-feeling, bias, motive and animus upon the part of any witness testifying against him.

Under these circumstances we can only conclude that the trial court should have allowed the testimony concerning the affray before the jury for the purpose of showing bias and prejudice, etc., which may have affected the credibility of Hosea's testimony.

In view of our disposition of this case, the other grounds of error will not be discussed.

For the above reasons, the judgments are reversed and remanded.

DOUGLAS, J., concurs in the result.