**Kimberly June POSEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–00958–CR.**

Court of Appeals of Texas, Dallas.

Aug. 25, 1987.

Rehearing Denied Oct. 9, 1987.

J. Thomas Sullivan, SMU School of Law, Mike McCollum, Dallas, for appellant.

Anne B. Wetherholt, Robert Francis, Richard Reed, Dallas, for appellee.

Before HOWELL, STEWART and THOMAS, JJ.

THOMAS, Justice.

Kimberly June Posey appeals her conviction for resisting arrest. Upon being convicted by a jury, appellant was sentenced by the trial court to thirty days in the Dallas County Jail, probated for twelve months and assessed a fine of $100. In five points of error, she complains that: (1) her conviction is a violation of rights granted to her by Article I, section 9 of the Texas Constitution; (2) the trial court erred in refusing to strike a juror for cause; (3) the trial court erred in restricting her cross-examination of a prosecution witness; (4) the trial court abused its discretion in permitting introduction of evidence which impeached her on collateral matters, and (5) the trial court erred in overruling appellant's objection to the prosecutor's final argument. Because we agree that the trial court erred with respect to the third and fourth points of error, we reverse and remand for a new trial.

The evidence established that Officers Whitlatch and Palmer responded to a family disturbance call at a duplex located at 6606 Ethel Street. The officers testified that they heard loud yelling and screaming from inside the house. After being invited inside, the officers proceeded to try to ascertain the cause of the domestic disturbance. Officer Palmer testified that while he was attempting to talk to the husband, appellant kept interrupting by shouting obscenities and generally being disruptive. Throughout this period, appellant continuously ordered the officers to leave her property, telling them they were not needed.

The officers wanted to complete their investigation and therefore decided to take the husband outside. Appellant was requested or ordered to stay inside the house. Appellant ignored the instructions and followed them onto the porch. Whitlatch told appellant that if she continued to yell and scream at her husband and them, she would be arrested for disturbing the peace. To try to prevent an arrest, the husband attempted to get his wife to go back into

the house. A shoving match ensued, which resulted in appellant's arm going through the screen door. Appellant stayed inside the door for a minute or so and then started into the front yard. As she continued to yell and scream, she was arrested by Officer Whitlatch for disorderly conduct.

Officer Whitlatch confirmed Palmer's testimony and stated that, as Palmer tried to question the husband, he attempted to talk to appellant. When she continued to yell profanities in the front yard, Whitlatch testified that he told appellant she was under arrest. As he attempted to handcuff appellant, she began to jerk away. A struggle ensued which resulted in Whitlack putting his arm around appellant's neck and pushing her against a nearby car. Appellant's husband observed the altercation and ran over to try to help his wife. After Palmer subdued the husband with a choke hold, he assisted Whitlatch in handcuffing appellant. Appellant and her husband were then transported to jail.

Appellant's mother-in-law, who lived in the other side of the duplex, contradicted the testimony of the officers. She testified that appellant had been rendered very weak by an epileptic seizure the morning of the incident. Further, the mother-in-law stated that she had heard no yelling or screaming prior to the officers' arrival. She then said that one officer took her son, appellant's husband, to the patrol car and that, as appellant walked off the steps to follow, the other officer leaped on her from behind. This witness further testified that as the officer was choking appellant, her son ran over and attempted to help.

Appellant's husband confirmed the seizure and that it had left appellant groggy and disoriented. He said that he and his wife had argued off and on all day because she refused to go to the hospital to be examined. He further testified that they had "hollered a little bit" before the police came but that no violence had occurred. He said that, as he was talking to one officer at the patrol car, his wife came back outside. According to this witness, as appellant stepped off the porch, the other officer jumped on her back and put his fingers around her throat. He stated at this time that he ran over and tried to pull the officer off his wife but was subdued by the other policeman.

Appellant testified that she and her husband invited the police inside but immediately told them they weren't needed and asked them to leave. She stated that the officers and her husband walked outside onto the porch and as they were leaving, she was ordered to stay in the house on pain of arrest. She acknowledged that her husband attempted to get her to stay in the house and shoved her causing her arm to go through the screen door. She said that she followed them outside and took about one step off the porch when one of the officers seized her by the neck. According to appellant, she could not breathe and she acknowledged trying to pull away from the grasp of the officer. According to appellant, she lost consciousness and when she awoke, she was handcuffed and lying on the ground.

In point of error number three, appellant contends that the trial court erred in restricting her right to cross-examine Officer Whitlatch. We agree.

During cross-examination of Officer Whitlatch, counsel inquired as to the consequences to an officer for using excessive force in making an arrest. The witness testified that he was aware that he could lose his job as a result of using excessive force. The questioning continued:

Q: So it's important, isn't it, Officer, that when you go out and arrest someone you don't use excessive force; isn't that true?

A: Yes, sir.

Q: And as a police officer, you're not above the law and you can't use excessive force in order to arrest citizens; isn't that correct?

A: Someone could. I haven't.

Q: But you have never done that before, have you, Officer?

A: No, sir, I haven't.

Appellant's counsel established that the witness had received a complaint, earlier in that year, for using excessive force in con-

nection with an arrest. In a hearing, outside the presence of the jury, Whitlatch stated that he had used a "stun gun" on a person who was resisting arrest. Whitlatch further explained, however, he was not disciplined for using excessive force, but rather was reprimanded for possessing the "stun gun" which was an unauthorized weapon. The trial court ruled that since the matter related to the improper use of equipment and not the use of excessive force, the evidence did not relate to a material element of the offense. The trial court further ruled that the probative value of the evidence was out-weighed by the prejudice in admitting additional evidence.

The entire file concerning this incident was admitted for purposes of appellate review. In reviewing the documents, it is clear that, contrary to Whitlatch's assertions in court, the complaint of excessive force was sustained. The Dallas Police Department, after investigation and hearing, ruled the use of the "stun gun" was unnecessary and thus constituted excessive force. Since it appeared there had been a legitimate misunderstanding by Whitlatch as to whether he was authorized to carry a "stun gun", he was not disciplined for the offense of carrying an unauthorized weapon.

The chief purpose of cross-examination is to test the accuracy and credibility of the witness. Inasmuch as the sixth amendment encompasses a right of cross-examination, any restriction in the scope must be measured against that constitutional right. Depriving the accused of the opportunity to effective cross-examination is "constitutional error of the first magnitude" and can in no event be considered to be harmless error. *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974).

It is well established that Texas law permits cross-examination to any matter relevant to the issues. The only restriction is relevancy. In a criminal trial, great latitude should be allowed the accused to show a witness' bias or motive to testify falsely against him. *Bates v. State*, 587 S.W.2d 121, 133 (Tex.Crim.App.1979); *Jackson v. State*, 552 S.W.2d 798, 801 (Tex.Crim.App.

1976). This latitude allows the accused to show any fact which would tend to establish ill feeling, bias, motive, and animus on the part of any witness testifying against him. *Simmons v. State*, 548 S.W.2d 386, 388 (Tex.Crim.App.1977); *Evans v. State*, 519 S.W.2d 868, 871 (Tex.Crim.App.1975). This latitude is allowed so that the jury is given the opportunity to judge for themselves the witness' credibility in light of the ill feeling, bias, motive and animus shown by the evidence in issue. *Wood v. State*, 486 S.W.2d 359, 362 (Tex.Crim.App.1972). The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally-protected right to confrontation. *Davis v. Alaska*, 415 U.S. at 316, 94 S.Ct. at 1110.

Admission of impeachment evidence is particularly admissible where the witness is the sole or chief witness of the State. *Blake v. State*, 365 S.W.2d 795, 796 (Tex.Crim.App.1963); *Kissinger v. State*, 126 Tex.Cr.R. 182, 70 S.W.2d 740, 742 (1934). Likewise, admission of impeachment evidence is particularly required where the question before the jury comes down to an issue of whether to believe the witness' version of the events or that of the accused. *Blair v. State*, 511 S.W.2d 277, 279 (Tex.Crim.App.1974). The rule further applies to police officers appearing as witnesses. *Id.*

The prevailing theory of the defense was that the appellant resisted the excessive force applied by Officer Whitlatch. The issue of the officer's use of force was sharply contradicted by the witnesses at trial. Since the defense relied upon the theory of self-defense, it was particularly imperative that the appellant be permitted to fully establish this witness's motive for stating that he had not used excessive force.

■ Appellant's fourth point of error contends that the trial court committed reversible error in overruling objections to certain cross-examination of appellant and certain impeachment evidence. We agree.

During cross-examination, the prosecutor asked appellant whether she and her husband had engaged in previous violent argu-

ments and how often they occurred. The trial court overruled defense counsel's objections and admitted the testimony. In response, appellant admitted that she and her husband may have had two or three such arguments in the past. Next, the prosecutor inquired into whether she had ever told anyone that she did not want to return home because she did not want to face her husband's beatings, whether she had ever told anyone that she was going to kill herself rather than face another beating, and whether she and her husband had had an altercation in the courtroom the previous Wednesday. The defense attorney objected on the ground that these matters were collateral. After the objections were overruled, the appellant denied the first two matters but acknowledged that there had been an altercation during the course of the trial.

As a rebuttal witness, the prosecution brought the court's bailiff to the stand. The defense attorney objected to any testimony from this witness on the grounds that its sole use was to impeach appellant on a collateral matter. The trial court overruled the objection and allowed the bailiff to testify that appellant had told the bailiff that she did not want to return home and face her husband's beatings and that she was going to kill herself to avoid such beatings in the future.

At the trial, the prosecutor justified this line of questioning by portraying the testimony as an illumination of appellant's state of mind and the effect it might have on her testimony before the jury. On appeal, the State contends that the testimony was admissible since the defense had placed appellant's state of mind in issue and "opened the door" by the testimony concerning the effect of the epileptic seizure under *Moncrief v. State*, 707 S.W.2d 630 (Tex.Crim. App.1986).

We do not find *Moncrief* to be applicable to our situation. In that case, appellant had been charged with murder and introduced testimony, as part of the defense, that the appellant was not a violent or aggressive person and that he was not known to start any problems with anyone.

The State rebutted this with evidence that appellant's reputation for being a peaceful and law-abiding citizen was bad. *Moncrief v. State*, 707 S.W.2d at 631. In our case, there is no contention by the State that appellant directly put in issue the subject of the peaceful nature of her marital relationship.

The determination of whether this evidence is admissible is a determination of the relevancy of the evidence. TEX.R. CRIM.EVID. 404. The trial court's determination of relevancy is within its discretion and will only be reversed for an abuse of that discretion. *Williams v. State*, 535 S.W.2d 637, 639–640 (Tex.Crim.App.1976). We conclude that the trial court abused its discretion.

Texas permits cross-examination of any matter relevant to the issues. On the other hand, cross-examination cannot extend to irrelevant, collateral and immaterial matters. A matter is "collateral" if the cross-examining party would not be entitled to prove such matter as part of his case-in-chief. *Shipman v. State*, 604 S.W.2d 182 (Tex.Crim.App.1980).

The issues at the trial concerned whether or not on the 22nd day of June, 1985, the appellant had intentionally prevented and obstructed Officer Whitlatch from effecting her arrest by using force against the police officer. The defense put into issue whether or not the officer had used excessive force in attempting to arrest appellant.

The number of domestic altercations which might have occurred during the ten-year marriage and particularly an altercation which occurred thirteen months after the arrest incident clearly had no relevancy upon the charges against appellant. The State cannot create a contested issue through its cross-examination and then claim that such issue "opens the door" to rebuttal evidence.

The subject matter of the effect of alleged beatings on appellant's state of mind was introduced solely by the State. This subject matter first appears in the record in the State's cross-examination of appellant. The State cannot rely on answers to its own cross-examination as an invitation

to rebuttal. *Bates v. State,* 587 S.W.2d 121, 133 (Tex.Crim.App.1979); *Hatley v. State,* 533 S.W.2d 27, 29 (Tex.Crim.App. 1976); *Hoffman v. State,* 514 S.W.2d 248, 252 (Tex.Crim.App.1974). Consequently, it was error for the trial court to allow the State to introduce the challenged evidence.

Having found that the trial court erred in the exclusion and admission of certain evidence, we cannot conclude beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. TEX.R.APP.P. 81(b)(2). Thus, we reverse the trial court and remand for a new trial in accordance with this opinion.

Reversed and Remanded.