Juan Manuel GUTIERREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 68508.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 1, 1989.

Mike DeGeurin, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Larry Q. Urquhart and Jack Frels, Asst. Dist.

Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION

McCORMICK, Judge.

Appellant was convicted of murder. The jury assessed punishment at twenty-five years' confinement. On original appeal to this Court, appellant raises three points of error. In one point of error, appellant alleges that the trial court erred in refusing him the opportunity to present impeachment evidence. In another point of error, appellant alleges that the trial court violated his Sixth Amendment right to confrontation by unduly restricting his cross-examination of a State's witness. Finally, appellant asserts that the trial court improperly overruled his motion for a new trial. Finding no merit in appellant's points of error, we affirm the conviction.

IMPEACHMENT EVIDENCE

In his second point of error, appellant contends that the trial court erred when it denied him the opportunity to present evidence impeaching the testimony of a State's witness.

Juan Antonio Adame was an eyewitness to the murder of his brother, Pedro Adame. Called by the State in the prosecution of appellant, Juan Adame testified that on the night of the murder he accompanied his brother to a lounge. While they were drinking with friends, appellant entered the lounge and asked to talk to Pedro. The two went outside. Juan followed his brother and appellant to the doorway and watched. He saw that appellant was standing approximately two feet from his brother when suddenly appellant took two steps backward, pulled out a gun and fired it four or five times, killing Pedro Adame.

During the presentation of the State's case-in-chief, and germane to the appellant's point of error, the prosecutor examined Juan Adame as follows:

"Q. Mr. Adame, when you went to your brother's body did you see any kind of weapon around him?
"A. There was nothing.
"Q. Did you see any kind of weapon?
"A. Nothing.
"Q. Did your brother even have a weapon that night?
"A. No.
"Q. Did your brother even carry a gun?
"A. No.
"[APPELLANT'S ATTORNEY]: Objection as to whether, Your Honor, that day or when, Your Honor.
"THE COURT: Set a time on it.
"QUESTIONS BY [STATE'S ATTORNEY] CONTINUED:
"Q. In the last year had you ever seen your brother carry a gun.
"A. No."

After the State rested, appellant sought to introduce the testimony of Angelita Ramirez. Before the jury, Angelita Ramirez was called to the stand and appellant's trial attorney asked, "What if anything, first attracted your attention to [Pedro Adame]?" The State's trial attorney objected on relevancy grounds and the trial court sustained the objection. The jury was excused from the courtroom and the following colloquy took place:

"[APPELLANT'S ATTORNEY]: Is the court telling me that I cannot ask this question as to whether or not she has of her own knowledge testimony to contradict testimony previous to this admitted before the court?
"THE COURT: You are asking a question that I can't answer....
"[APPELLANT'S ATTORNEY]: That's what you told me.
"THE COURT: Well, I can answer your question if you are attempting to develop evidence that at some time within the last year she has seen the deceased in this case carry a pistol, then I am sustaining the objection because that would be attempted impeachment on a collateral issue. No issue has been raised yet. There is not evidence that the deceased even had a pistol."

Appellant contends that the trial court impermissibly erred when it refused to allow him to present evidence that the victim had been seen carrying a pistol within the past year.

■ The State responds that, since the appellant never actually established the specific questions he intended to ask and the specific testimony to be elicited, he failed properly to preserve error. We disagree.

This Court has held that a defendant is not limited to any one method of showing what excluded testimony would have been. *Moosavi v. State*, 711 S.W.2d 53 (Tex.Cr. App.1986). In the instant case, appellant's attorney clearly explained to the trial court what Angelita Rodriguez' testimony would have been. Indeed, the trial court told appellant's trial counsel that "if you are attempting to develop evidence that at some time within the last year she had seen the deceased in this case carry a pistol, then I am sustaining the objection." The trial judge in this case certainly knew what he was excluding. *Moosavi*, 711 S.W.2d at 56. We find that trial counsel's concise statement as to the expected testimony of Angelita Rodriguez was sufficient to preserve error for our review.

The State also argues that the trial court properly excluded the proposed testimony as it was merely an attempt to impeach a witness on a collateral matter. We are compelled to agree.

It is improper to utilize extrinsic evidence to impeach a witness on collateral matters. *McManus v. State*, 591 S.W.2d 505, 524 (Tex.Cr.App.1979). The issue then is whether the matter sought to be introduced for impeachment purposes was collateral to the issues at trial; that is, "[c]ould the fact as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?" McCormick & Ray, Texas Practice, *Evidence*, Section 684, p. 527 (2d Ed. 1956). See also, *Keller v. State*, 662 S.W. 2d 362, 365 (Tex.Cr.App.1984); *Bates v. State*, 587 S.W.2d 121, 133 (Tex.Cr.App. 1979). Appellant argues that the proposed

testimony is not collateral as it is relevant to his theory of self-defense.

■ In a homicide case, when there is some evidence of an act on the part of the deceased sufficient to raise an issue as to whether the defendant justifiably caused the death in self-defense, evidence of both the general reputation of the deceased for being of violent or dangerous character, and prior specific acts of violent misconduct committed by the deceased which illustrate his violent character are admissible. *Lowe v. State*, 612 S.W.2d 579 (Tex. Cr.App.1981); *Beecham v. State*, 580 S.W. 2d 588 (Tex.Cr.App.1979); *Dempsey v. State*, 159 Tex.Crim. 602, 266 S.W.2d 875 (1954). This type of evidence is admissible to either show the reasonableness of a defendant's claim of apprehension of danger or to show who was the aggressor at the time of the killing. *Thompson v. State*, 659 S.W.2d 649, 653 (Tex.Cr.App.1983). Appellant's proposed testimony shows neither.

Merely carrying a weapon is not *per se* a violent or aggressive act of and by itself. *Thompson*, 659 S.W.2d at 654. See also, *Johnson v. State*, 650 S.W.2d 414, 416 (Tex. Cr.App.1983). Thus, appellant's would-be evidence is not relevant to show that appellant was the aggressor at the time of the killing. *Thompson*, 659 S.W.2d at 654.

Moreover, the proposed testimony does not show the reasonableness of appellant's claim of apprehension of danger. The Texas Penal Code provides that a person is justified in using force against another when and to the degree "he reasonably believes the force is necessary to protect himself against the other's use or attempted use of force." V.T.C.A., Penal Code, Section 9.31. This provision squarely places the defendant's state of mind at the time of the homicide in issue; when it is invoked, the deceased's reputation for violence and commission of prior specific acts of violence *which are known to the defendant* are probative of whether the defendant reasonably believed the force he used was necessary to protect himself. *Thompson*, 659 S.W.2d at 654; *Dempsey*, 266 S.W.2d at 877. See also, *Dixon v.*

*State,* 634 S.W.2d 855 (Tex.Cr.App.1982). Angelita Ramirez' testimony in no way relates to appellant's knowledge at the time of the killing. Her testimony would have related only to what *she* observed at a time previous to the homicide. Her testimony, therefore, is collateral to any issues before the jury at appellant's trial.

The trial court did not err when it refused to admit the testimony of Angelita Ramirez as it would have constituted impeachment of a witness on a collateral matter. Appellant's second point of error is overruled.

## RIGHT TO CONFRONTATION

■ In his first point of error, appellant contends his right to confront a State's witness was denied when the court restricted his cross-examination of the deceased's brother.

As stated previously, Juan Adame was an eyewitness to his brother's murder. After witnessing the shooting, Juan attempted to find appellant. He removed the truck key from his brother's pants pocket and pursued appellant in his brother's truck. He first went to pick up his son and a man named Lee Rodriguez. While searching for appellant the three were stopped by the police. Juan Adame and Lee Rodriguez were arrested for carrying a hand gun that was found behind the seat of the truck. Juan, however, was released after it was determined that the gun belonged to Rodriguez.

After Juan had testified to these events, appellant wanted to cross-examine him as to: (1) where he was when the police found the hand gun; (2) if Lee Rodriguez was on probation at the time of his arrest; (3) if Pedro Adame was on probation at the time of the killing; (4) why he did not go to a different door when he followed his brother and appellant outside the lounge; and, (5) whether his son was also arrested when the three were stopped while trying to find appellant. The trial court, however, sustained various objections made by the State and appellant moved onto other areas of inquiry. (Excerpts from the record, containing the questions asked, the State's ob-

jections thereto and the trial court's rulings, are set out in the appendix.) Appellant claims that the trial court's actions deprived him of his Sixth Amendment right to cross-examine a witness against him.

Cross-examination is the cornerstone of the criminal trial process and, as such, a defendant must be given wide latitude to explore a witness' story, to test the witness' perceptions and memory and to impeach his or her credibility. See *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). See also *Koehler v. State,* 679 S.W.2d 6, 9 (Tex.Cr.App.1984); *Blair v. State,* 511 S.W.2d 277, 279 (Tex.Cr.App.1974). As stated in *Davis:*

"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' This right is secured for defendants in state as well as federal criminal proceedings under *Pointer v. Texas,* 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923] (1965). Confrontation means more than being allowed to confront the witness physically. 'Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination.' *Douglas v. Alabama,* 380 U.S. 415, 418 [85 S.Ct. 1074, 1076, 13 L.Ed.2d 934] (1965)." *Davis,* 415 U.S. at 315, 94 S.Ct. at 1110.

The Sixth Amendment, however, is not a talisman justifying forays into matters that are collateral to the issues at trial. Although it tips the scales in favor of permitting cross-examination, the Sixth Amendment does not prevent the trial court from evaluating the subject of inquiry, determining its probative value to the trier of fact and its probable effect on the fair and efficient conduct of the trial. See *Broyles v. State,* 552 S.W.2d 144, 148 (Tex.Cr.App. 1977); *Hicks v. State,* 482 S.W.2d 186, 189 (Tex.Cr.App.1972). See also *Chipman v. Mercer,* 628 F.2d 528, 531 (9th Cir.1980) (writing that "some topics may be of such

minimal relevance that the trial court would be justified in either totally prohibiting cross-examination about them or in allowing only limited questioning").

It is appellant's specific complaint that the restricted areas of inquiry, listed above, were relevant to his theory of self-defense. In his brief, he asserts that his "right to present a defense" was improperly restricted by the trial court because he was not allowed to "adequately test the credibility of Juan Antonio Adame ... concerning the pistol and was not allowed to develop the deceased's propensity to carry a weapon and the deceased's violent character." We disagree.

Whether Juan Adame's son was arrested with the two other men after being stopped by the police is of no significance to the victim's and appellant's acts which occurred previous to the arrest and out of the presence of the appellant. Also, why Juan Adame would go to a particular door to witness the shooting is merely speculative and, again, we fail to see the significance of this line of questioning. Likewise, whether Lee Rodriguez was ever on probation is irrelevant. Rodriguez took no part in the shooting; he was not even present at the lounge and could not have been either a witness to or a participant in the events there. Therefore, we can not say that the trial court abused its discretion in refusing to allow questions on these matters. If the facts sought to be elicited by appellant are, or could later in the trial become, related to other issues in the case, appellant did not inform the trial court of such relevancy and does not do so in his brief before this Court.

Whether the victim was on probation at the time of the shooting was also irrelevant to any issue in the case. This Court has held that specific acts of violence by the deceased which show his or her violent character are admissible in a homicide case where there is evidence of some act of aggression by the deceased which gives rise to a claim of self-defense or defense of a third person. *Lowe v. State*, 612 S.W.2d 579, 580 (Tex.Cr.App.1981) and the cases cited therein. But it is not the fact that the victim was on probation that is significant, it is the fact that the act (for which one may have received probation) is an act involving violence. We note that appellant, in the case before us, was not precluded by the trial court's ruling from developing these facts before the jury. The trial court sustained the State's objection that the "form" of the question was improper. The trial court did not prohibit the appellant from asking questions relative to the victim having committed acts of violence. Appellant chose not to pursue this particular line of inquiry by changing the form of the question so as to comply with the trial court's ruling. Thus, no error is demonstrated by the record before us.

Finally, "arguing with the witness" was the basis for the State's objection in regards to where Juan Adame was located when the officers found the gun in the truck. Appellant changed his question and the witness was allowed to answer it. Again, no error is demonstrated by the record.

Because we conclude that the record fails to demonstrate an abuse of discretion on the trial court's part in restricting the cross-examination of a State's witness, appellant's first point of error is overruled.

## MOTION FOR NEW TRIAL

■ In his final point of error, appellant contends that the trial judge erred in refusing to grant him a new trial. The record shows that the judgment in this cause was entered on January 11, 1980. On January 18, 1980, appellant filed a motion for new trial alleging that the verdict was contrary to the law and the evidence. This motion was overruled by the court on February 7, 1980. On that same day, the sentence was entered and appellant gave notice of appeal. On May 8, 1980, appellant filed another motion for new trial, alleging that the jurors had assessed a lengthy punishment (twenty-five years) because they were afraid that they might be harmed by members of the victim's family if they assessed a lighter sentence. Attached to appellant's second motion for new trial was an affidavit signed by one of

the jurors outlining what had occurred in the jury room. On May 16, 1980, the court entered an order denying appellant permission to file this motion for new trial.

At the time of appellant's trial, Article 40.05, V.A.C.C.P. (1979, repealed), provided that a motion for new trial should be filed within ten days after conviction as evidenced by the jury's verdict and could be amended with the court's permission at any time before it was acted upon within twenty days after it was originally filed. The statute also provided that "for good cause shown" the time for filing or amending could be extended by the court.

Clearly, this second motion for new trial was untimely. The motion did not allege, and appellant did not prove, good cause for the late filing of this motion. Thus, the court acted properly in not considering appellant's motion for new trial. *Jones v. State,* 501 S.W.2d 677, 679 (Tex.Cr.App. 1973). See also, *Ex parte Herrin,* 537 S.W.2d 33, 35 n. 6 (Tex.Cr.App.1976).

Appellant's final point of error is overruled.

The judgment is affirmed.

CLINTON and MILLER, JJ., concur in result.

TEAGUE, J., dissents.

#### APPENDIX

Appellant cross-examined a State's witness, Juan Adame. Some of his questions, however, were objected to by the State's attorney with the trial court sustaining the objection. The specific basis for appellant's complaint that the trial court impermissibly restricted his cross-examination of the State's witness is as follows.

First, appellant directs us to the following:

"Q. Now, this pistol that you are telling us about, did you say that it was behind the seat of the pickup?

"A. The policeman said that that was where he found it.

"Q. Weren't you there? Don't you know where he found it?

"[STATE'S ATTORNEY]: Arguing with the witness. I object to it.

"THE COURT: Sustained.

"Questions by [defense attorney] continued:

"Q. Were you there when the police found the pistol?

"A. No.

"Q. Where were you, sir?

"A. Some policeman had me in the back of the truck."

The second alleged restriction of cross-examination occurred when defense counsel attempted to question the witness in regards to whether Lee Rodriguez was on probation:

"Q. Do you know where Lee Rodriguez lives?

"A. He is in prison.

"Q. When was he sent to prison?

"A. That same day.

"Q. Sunday?

"A. The same day.

"Q. We are talking about a Sunday, are we not?

"A. That same day, exactly, that Sunday.

"Q. Was he sent to prison because of this pistol or because he had other charges pending against him?

"[STATE'S ATTORNEY]: Object on two grounds. Number one, it's not material or relevant and, two, calls for a conclusion and speculation on his part.

"THE COURT: Sustained.

"Questions by [defense attorney] continued:

"Q. Do you know if Lee Rodriguez was out on a probation?

"THE COURT: I already sustained. Further along that line is not material."

Third, appellant attempted to question the witness about his brother being on probation at the time of the killing:

"Q. Do you know if your brother Pete owned a .45 Commando semi-automatic pistol?

"A. I never knew him to have any weapon.

"Q. Was your brother Pete on probation at the time that he was killed?

"[STATE'S ATTORNEY]: Object to that. It's an improper form of question.

"THE COURT: That's sustained."

Fourth, appellant also complains he was unduly restricted when he attempted to question the witness about his position to see the shooting:

"Q. Now, this is a garage door; is that correct?

"A. Yes.

"Q. Was this door opened or closed?

"A. Open.

"Q. Did you tell her that you had gone over to the standard door to look out or to the garage door?

"A. The small door.

"Q. Why didn't you go to the garage door?

"[STATE'S ATTORNEY]: Object to that, why didn't he go to the garage door.

"THE COURT: Sustained."

Finally, appellant asserts error occurred when he attempted to question the witness concerning his son's arrest on the night of the shooting:

"Q. How old is your son?

"A. Seventeen years.

"Q. When you were stopped by the police was he released by the police or taken in with you?

"[STATE'S ATTORNEY]: Object. That's not material.

"THE COURT: Sustained. That has nothing to do with it."