No. 04-98-00581-CV



IN THE MATTER OF C.F.C.



From the 73rd Judicial District Court, Bexar County, Texas


Trial Court No. 97-JUV-02258


Honorable Andy Mireles, Judge Presiding(1)



Opinion by: Tom Rickhoff, Justice 


Sitting: Tom Rickhoff, Justice 

 Sarah B. Duncan, Justice 

 Karen Angelini, Justice 


Delivered and Filed: August 31, 1999 


AFFIRMED 


 C.F.C. was adjudicated delinquent for assaulting a police officer and was placed on probation
for twelve months. In six issues, she argues the trial court erred by excluding evidence of the
officer's disciplinary record and that she was denied due process by the State's failure to correct the
officer's perjurious testimony. We affirm.

Factual Background


 C.F.C. was involved in an altercation at her neighbor's house. Shortly after the altercation
ended, Officer Robert Martinez arrived on the scene to investigate. He testified that C.F.C. assaulted
him when he tried to question and detain her. C.F.C. claimed that Martinez used excessive force and
that she acted in self-defense. 

Procedural History


 Before trial, C.F.C.'s attorney requested access to Martinez's disciplinary record and argued
that the record might be admissible as evidence of bias/motive or as character evidence pursuant to
Rules 404(a)(2) and 405 of the Texas Rules of Evidence. The court conducted an in camera review
of the record and tentatively ruled that it would not be admissible. 

 The issue of the admissibility of the record came up again during the cross-examination of
Martinez. C.F.C.'s attorney questioned Martinez about his training in the use of force and about the
degree of force necessary in various situations. The following colloquy then occurred:

 Q: And you said that you received a fair amount of training in proper police procedures and
so forth; is that right?

 A: Correct.


 Q: And it would be safe to assume that the San Antonio Police Department has a fairly
detailed set of procedures and policies?

 A: They have some policies, yes, in force [sic].


 Q: And you're supposed to follow those?

 A: Absolutely.


 Q: Okay. And you always do follow those; would that be safe to say?

 A: Yes, I do.


 Q: And there would not be any occasions on your record in which you were found not to
have followed the procedures?

 A: That is correct. 


Following this testimony, C.F.C.'s attorney again requested access to Martinez's disciplinary record
to determine whether it contained any information he could use to impeach Martinez. Counsel was
particularly interested in information that would demonstrate bias or motive. The court denied the
request. Cross-examination then resumed, with counsel asking Martinez, "[Y]ou had testified that
you always follow the proper procedures according to the San Antonio Police Department; is that
correct?" Martinez responded, "Yes, sir." 

 Counsel subsequently learned from searching public records that Martinez had been
reprimanded by the SAPD. He argued the reprimand was admissible to impeach Martinez's
testimony that he always follows police procedures. He also argued the reprimand demonstrated bias
and a motive to fabricate the assault complaint against C.F.C. His theory was that Martinez may
have fabricated the assault charge to prevent receiving a second reprimand for using excessive force
against C.F.C. The court ruled that the reprimand was inadmissible because it was character-conformity evidence and because it would constitute impeachment on a collateral matter. 

 The court subsequently indicated that it might reconsider its ruling and allowed C.F.C.'s
attorney to review Martinez's disciplinary file, noting that two related incidents in the file might be
admissible. The first incident involved Martinez yelling at a school principal while he was off duty.
This incident resulted in the reprimand mentioned above. The second incident was a subsequent
altercation between Martinez and some officers from the school district. This incident did not result
in any disciplinary action against Martinez. After C.F.C.'s attorney had reviewed the file, the court
gave him an opportunity to establish any ground upon which the two incidents would be admissible.
Counsel again argued the incidents were relevant to impeach Martinez's testimony that he always
followed police procedures and to demonstrate his motive for claiming C.F.C. assaulted him. The
court refused to admit the evidence, but it did allow counsel to question Martinez before the jury
about his knowledge of police disciplinary procedures. Martinez testified that if he had been found
to have used excessive force in this case he would have been disciplined and that he "would
imagine" the punishment could be very severe. 

Exclusion of Disciplinary Record


 In her first four issues, C.F.C. argues the trial court erred by excluding the two incidents in
Martinez's disciplinary record. We will not disturb the trial court's decision to exclude evidence
absent a clear abuse of discretion. See Easley v. State, 986 S.W.2d 264, 268 (Tex. App.--San
Antonio 1998, no pet.). 

Bias/Motive

 C.F.C. asserts she was entitled to use the disciplinary record to establish Martinez's motive
to fabricate his claim that she assaulted him. Pursuant to the Sixth Amendment right of
confrontation, a defendant may cross-examine a witness about specific instances of prior misconduct
to establish the witness's bias or motive to testify. See Moody v. State, 827 S.W.2d 875, 891 (Tex.
Crim. App. 1992); Driggers v. State, 940 S.W.2d 699, 708 (Tex. App.--Texarkana 1996, pet. ref'd).
But "[t]he Sixth Amendment ... is not a talisman justifying forays into matters that are collateral to
the issues at trial." Gutierrez v. State, 764 S.W.2d 796, 799 (Tex. Crim. App. 1989). Nor does it
"prevent the trial court from evaluating the subject of inquiry [and] determining its probative value
to the trier of fact and its probable effect on the fair and efficient conduct of the trial." Id. 

 C.F.C. argues this case is similar to Posey v. State, 738 S.W.2d 321 (Tex. App.--Dallas
1987, pet. ref'd). In Posey, the defendant was charged with resisting arrest. As in this case, the
defendant claimed she was merely defending herself against excessive force used by the officer. The
court of appeals held that she should have been allowed to cross-examine the officer about an
incident in which he was found to have used excessive force. See Posey, 738 S.W.2d at 324. 

 C.F.C.'s assault on Martinez occurred on June 26, 1997, and the original petition alleging
delinquent conduct was filed on August 7, 1997. The incident resulting in Martinez's reprimand
occurred on August 15, 1997, and the altercation between Martinez and the school district officers 

was subsequent to that. Since Martinez obviously reported the assault before the incidents
mentioned in his disciplinary file occurred, the incidents' probative value to establish Martinez's
motive to fabricate his testimony is marginal. In Posey, there is nothing to indicate that the incident
of excessive force occurred after the resisting arrest charge was made. Furthermore, although the
incidents in Martinez's disciplinary record may have involved some violence, they did not involve
excessive force in his capacity as a police officer. This too distinguishes this case from Posey. We
also note that the trial court allowed C.F.C. to explore Martinez's motive to fabricate by asking him
whether he understood that he could be disciplined for using excessive force on her. Under these
circumstances, the court did not abuse its discretion.

Correcting Martinez's Misrepresentations

 C.F.C. asserts the disciplinary evidence was relevant to correct Martinez's misrepresentations
that he always followed police procedures. She refers to the cross-examination testimony recited
above, in which Martinez claimed that he "always" followed police department policies and
procedures and that "there would not be any occasions on [his] record in which [he was] found not
to have followed the procedures." 

 It is not at all clear to this court that these statements were misrepresentations. We note that
the questions eliciting these responses were asked immediately after counsel had cross-examined
Martinez about his training in the use of force and about the degree of force permitted in different
situations. It is at least plausible that Martinez understood counsel's reference to policies and
procedures to relate to policies and procedures on the use of force. There is nothing in the record
to establish that Martinez ever violated these policies and procedures. It is also plausible that
Martinez did not believe the conduct for which he was reprimanded--yelling at someone while off
duty--amounted to the violation of a police "procedure." For these reasons, his cross-examination
testimony may have been truthful. 

 Moreover, a witness may not be impeached on a collateral matter. See Gutierrez, 764 S.W.2d
at 799. Whether Martinez had ever violated any policy of the police department, including violations
that did not result in disciplinary actions, was clearly collateral to the issues in this case.
Theoretically, whether he had ever been disciplined for violating police procedures may have been
relevant to his motive for testifying. As explained above, however, the relevance of the particular
incident for which he was reprimanded was marginal. We also note that the testimony C.F.C. sought
to impeach was procured during cross-examination. Considering these factors, the trial court did not
abuse its discretion by excluding the evidence. See 1 Steven Good, Olin G. Wellborn III & M.
Michael Sharlot, Guide to the Texas Rules of Evidence: Civil and Criminal § 607.3 (Texas
Practice 1993). 

 C.F.C. also argues the prosecution opened the door to cross-examination about Martinez's
disciplinary record by questioning Martinez about his knowledge of police procedures. The
prosecutor's questions focused on Martinez's training in the use of force. To the extent the cross-examination questions can be interpreted to refer only to policies and procedures on the use of force,
Martinez's answers appear to be truthful. To the extent the cross-examination questions can be
interpreted to refer to all policies and procedures, the questions were too broad to fit through the door
opened by the prosecution.

Character Conformity

 Finally, C.F.C. suggests that the incidents described in Martinez's disciplinary record
constituted admissible character-conformity evidence. Although C.F.C. argued before trial that the
disciplinary record might contain admissible character-conformity evidence, she did not pursue this
argument at trial. In particular, we note she did not assert this ground after the court allowed her an
opportunity to review the record and to establish the admissibility of the two incidents. Assuming
this ground is preserved, we find no error for the following reasons.

 Evidence of a pertinent character trait of the victim is admissible to prove action in
conformity therewith. See Tex. R. Evid. 404(a)(2). But if the character trait is not an essential
element of the charge or the defense, the trait may only be proven through reputation or opinion
evidence, not through specific instances of conduct. See Tex. R. Evid. 405. Although the victim's
tendency to be aggressive is pertinent to a claim of self-defense, it is not an essential element of the
defense. See Tate v. State, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998); Evans v. State, 876
S.W.2d 459, 463 (Tex. App.--Texarkana 1994, no pet.). Therefore, the incidents described in
Martinez's disciplinary record do not constitute admissible character-conformity evidence.

Failure to Correct Perjurious Testimony


 In her fifth and sixth issues, C.F.C. argues the State's failure to correct Martinez's
misrepresentations denied her of due process. C.F.C. again refers to the cross-examination testimony
recited above. It is axiomatic that the State may not knowingly use false testimony to obtain a
conviction. See Napue v. Illinois, 360 U.S. 264, 269 (1959); Burkhalter v. State, 493 S.W.2d 214,
218 (Tex. Crim. App. 1973). As explained above, however, the record does not establish that
Martinez's testimony was indeed false. The State therefore had no duty to correct the testimony. 

Conclusion


 For the reasons stated herein, the judgment of the trial court is affirmed. 


 Tom Rickhoff, Justice 

DO NOT PUBLISH


No. 04-98-00581-CV



IN THE MATTER OF C.F.C.



From the 73rd Judicial District Court, Bexar County, Texas


Trial Court No. 97-JUV-02258


Honorable Andy Mireles, Judge Presiding(2)



BEFORE JUSTICE RICKHOFF, JUSTICE DUNCAN, AND JUSTICE ANGELINI



 In accordance with this court's opinion of this date, the judgment of the trial court is
AFFIRMED.


 SIGNED




 _____________________________________

 TOM RICKHOFF, JUSTICE 


1. Although Judge Mireles signed the judgment and order of disposition, the Honorable Juan Gallardo presided
at the trial.
2. Although Judge Mireles signed the judgment and order of disposition, the Honorable Juan Gallardo presided
at the trial.