**Danny HILLIARD, Appellant,**

v.

**The STATE of Texas, State.**

No. 2–93–223–CR.

Court of Appeals of Texas, Fort Worth.

Aug. 24, 1994.

J.E. Brownlee, Denton, for appellant.

Bruce Isaacks, Crim. Dist. Atty., Kathleen A. Walsh, Nancy Jessee, and Paul Johnson, Asst. Dist. Attys., Denton, for appellee.

Before FARRIS, DAY and HICKS, JJ.

## OPINION

FARRIS, Justice.

Danny Hilliard appeals a conviction for retaliation under TEX.PENAL CODE ANN. § 36.06 (Vernon 1989). He was sentenced by a jury to eight years' confinement. On appeal, he claims the trial court erred in the following: (1) permitting the introduction of extraneous offense evidence not relevant to any issue at trial; (2) permitting the introduction of photographs when their prejudicial potential outweighed any probative value; (3) permitting the State to ask an irrelevant and inflammatory question of appellant during cross-examination concerning a prior extraneous offense; and (4) limiting defense counsel's tender of evidence offered to rebut the extraneous offense evidence introduced by the State. Hilliard also claims the court abused its discretion in improperly restricting his cross-examination of the complaining witness and two of the State's witnesses.

Finding the trial court did abuse its discretion, we reverse and remand the cause for a new trial.

On March 6, 1992, Hilliard and his former girlfriend, Nicholle Trent, were alone together in his home. While there, he allegedly assaulted her. Trent filed charges against Hilliard and on March 9, he was arrested at his place of employment. Upon his release from jail, Hilliard allegedly called Trent and threatened to kill her if she did not drop the assault charge. Trent called the police and Hilliard was again arrested at his place of employment on the retaliation charge.

 Hilliard's first and second points of error concern the introduction of fourteen photographs taken of the complaining witness, Trent, after the appellant allegedly assaulted her. They rather gruesomely depict Trent with two black eyes, several bruises, and scratches. Hilliard claims the court erred in admitting these because they were evidence of an extraneous offense not relevant to any issue at trial, and because their prejudicial potential outweighed any probative value. The correct standard of review is whether the trial court abused its discretion in determining this evidence was relevant and in determining its probative value was

not substantially outweighed by the danger of unfair prejudice. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex.Crim.App.1990). Further, upon such a finding, this court must then determine beyond a reasonable doubt whether this error did not contribute to Hilliard's conviction or punishment. *See* TEX. R.APP.P. 81(b)(2).

 It is the general rule that "evidence of prior criminal conduct that is collateral to the charge on which the defendant is being tried is inadmissible." *Maynard v. State*, 685 S.W.2d 60, 66 (Tex.Crim.App.1985). This is so that the defendant will be tried for the offense charged and none other. *Alvarez v. State*, 511 S.W.2d 493, 494 (Tex.Crim.App. 1973). The relevant facts in this case were: (a) whether the complainant reported an assault allegedly committed by Hilliard; and (b) whether Hilliard threatened her as a result of her making that report. The photographs showed the complainant had suffered an assault, but they were not relevant in that they did not have the tendency to make the existence of the facts of consequence to the determination of the action any more or less probable than they would be without the photographs. *See* TEX.R.CRIM.EVID. 401. It was, therefore, an abuse of discretion for the court to allow the photographs into evidence and we must now determine if Hilliard was harmed by the error.

 Later in the proceedings, Hilliard did himself testify as to the occurrence of the alleged assault. While in some cases this might cure any harm, we hold that in this case, the doctrine of curative admissibility is not applicable. *See Maynard,* 685 S.W.2d at 65. When Hilliard testified, he sought to explain the assault, claiming the complainant attacked him and that he responded in self-defense. He also claimed she received some of her injuries when she jumped from his moving truck onto the road and a ditch below. The harmful effect of improperly admitted evidence is not cured by the fact that the defendant sought to meet, destroy, explain, contradict or refute such evidence by the introduction of rebutting evidence. *Id.* at 65–66. The photographs were of an extraneous offense, not tied to the elements of the

case, but useful only to show the possible character of Hilliard. *Id.* at 66. Admission of the evidence of this alleged offense was inherently prejudicial. *See id.; Murphy v. State,* 777 S.W.2d 44, 48 (Tex.Crim.App. 1988). This is not only true generally, but as evident by the record which reveals that the vast majority of the testimony elicited by both the State and defense concerned the underlying offense rather than the one for which Hilliard was being tried. Even the jury charge instructed the panel that they could consider the testimony of the extraneous offense in determining impeachment, if they found beyond a reasonable doubt that the defendant committed such other offense. Certainly, this admission of the unadjudicated extraneous offense evidence did result in a confusion of the issues for the jury and harm for the appellant. Points one and two are sustained.

In his third point, Hilliard claims the court erred in permitting the State to ask an irrelevant and inflammatory question of him concerning a prior extraneous offense. The question was asked on cross-examination during the punishment phase of the trial. The prosecutor showed Hilliard the photos of the complainant admitted into evidence during the guilt/innocence phase of the trial and asked:

> [PROSECUTOR]: You feel like this— these exhibits, these photographs right here represent the work of a useful and productive member of society?
>
> [HILLIARD]: I believe that pertains to another case.
>
> [PROSECUTOR]: Well, what society do you believe that a person would have to belong to to be considered useful and productive and do something like that?

Hilliard's counsel objected on the grounds of relevance, was overruled, and the same line of questioning continued. His counsel again objected on grounds of relevancy and that these questions were argumentative and amounted to badgering the witness. He was again overruled and the same line of questioning continued as follows:

> [PROSECUTOR]: What kind of society do you feel like you would belong to in order to be considered useful and produc-

tive to do something—to threaten to kill somebody if they came to court and testified or if they pressed charges against you for doing something like that? What kind of society would that be that you would belong to?

> [HILLIARD]: I can't answer that question.
>
> [PROSECUTOR]: It's a society of criminals in the Texas Department of Corrections, isn't it, Mr. Hilliard?

■ The scope of cross-examination is within the control of the trial judge in the exercise of his sound discretion. *Arnold v. State,* 679 S.W.2d 156, 160 (Tex.App.—Dallas 1984, pet. ref'd). When the defendant voluntarily takes the stand and testifies in his own behalf, he is subject to the same rules of cross-examination as any other witness. *Guzmon v. State,* 697 S.W.2d 404, 408 (Tex. Crim.App.1985). He may be contradicted, impeached, made to give evidence against himself, cross-examined as to new matters, and treated in every respect as any other witness testifying in behalf of the defendant, except when there are overriding constitutional or statutory prohibitions. *Id.* The determination of whether the evidence elicited by the questions on cross-examination is admissible is a determination of the relevancy of the evidence. *Posey v. State,* 738 S.W.2d 321, 325 (Tex.App.—Dallas 1987, pet. ref'd). The trial court's determination of relevancy will only be reversed for an abuse of discretion. *Id.*

■ During direct examination, Hilliard had requested that the jury give him probation. As a result of that request, he put his character into issue. *See Murphy,* 777 S.W.2d at 46. However, the questions asked by the prosecutor, using the improperly admitted photographs, focused on the underlying, unadjudicated extraneous offense. The jury had already convicted Hilliard of retaliation after hearing testimony from the complainant that he threatened to kill her. Then once again, the jury's attention was drawn to this alleged underlying violent act and the prosecutor's assertion that anyone who did such a thing, regardless of the circumstances, belonged in prison. We find the prosecutor's

line of questioning was error and we cannot conclude beyond a reasonable doubt that this error did not contribute to Hilliard's punishment. *Id.* at 49–50. Point of error three is sustained.

 Points five, six, and seven also refer to cross-examination, but during the guilt/innocence phase of the trial. Hilliard claims the trial court erred in improperly restricting his cross-examination of the complaining witness, and of two State witnesses: Detective Margaret Yarbrough and Glenda Hernandez, the complainant's mother. Regarding the complainant, defense counsel was not allowed to question her about the threats made to her by Hilliard, specifically, whether he had threatened to call her probation officer and report her use of alcohol and the alleged harm she had caused to Hilliard's children. Such questioning would have indicated to the jury that Trent had a criminal record, in this case, a conviction for driving while intoxicated. Such evidence cannot be used for the purpose of attacking her credibility. TEX.R.CRIM.EVID. 609. As for the alleged harm against the children, Trent had not been convicted of these actions, and thus, questions on this matter would have also been improper. *Id.* Further, Trent had already testified as to what threats were made to her, specifically stating Hilliard threatened to kill her. On point five, we find the court did not abuse its discretion in limiting this examination; the point is overruled.

 In regards to Detective Yarbrough, defense counsel again wanted to question her regarding Trent's prior convictions and whether the threat made by Hilliard while in the patrol car was to call Trent's probation officer. We have already discussed the admissibility of Trent's prior conviction, and found the trial court did not err in disallowing this evidence. We also find there was no error in not allowing defense counsel to ask the question about the probation officer. Detectives Yarbrough and Lozano both testified as to what was said in the patrol car including the threat made against the complainant and that when called on it by the officers, Hilliard said something to the effect of "You did not hear what I just said." Both officers testified they did not take that statement to

mean they misunderstood Hilliard, but that Hilliard believed they actually did not hear the threat. Further, in defense counsel's bill of exception, he questioned Yarbrough in regards to Hilliard threatening only to call Trent's probation officer. The detective responded that was not what Hilliard said. Having found no error, point number six is overruled.

Finally, Hilliard contends he was harmed by not being allowed to cross-examine Glenda Hernandez regarding the burglary of Hilliard's home by her son, and the complainant's brother, Ryan Trent. His claim is this line of questioning would have shown the jury that Trent and Hernandez had reasons for giving biased testimony against Hilliard. While the jury was present, defense counsel asked Hernandez:

> [DEFENSE COUNSEL]: Is there anything in the dealings between Ryan Trent and Danny that would cause you to have hard feelings against Danny?
>
> [WITNESS]: I don't have any hard feelings for Danny concerning Ryan, no.
>
> [DEFENSE COUNSEL]: So the fact that Danny filed charges on him for burglary has no effect on you; is that correct?

At this point, the State objected to the questions and that objection was sustained.

 It is a general rule, that exposing a witness's motivation for testifying either for the accused or for the State, or against the accused or against the State, is a proper and important purpose of cross-examination. *London v. State,* 739 S.W.2d 842, 846 (Tex. Crim.App.1987). In exercising this right, either party is allowed great latitude to show any fact which would or might tend to establish ill feeling, bias, motive, and animus on the part of the witness. *Id.* The trial judge does have broad discretion in this area, but it is not without limits. *Id.* Hilliard testified that the underlying assault did occur, although in self-defense; he testified he did "threaten" the complainant after he was arrested, but only that he would call her probation officer. His testimony was in direct conflict with the complainant's; a possible bias or motive on the part of the complainant and her mother to see Hilliard convicted of

this offense could have been an important part of his defense and would have strengthened his own testimony. By denying him the right to explore this possible bias, the trial court frustrated his right to effective cross-examination. *See Harris v. State,* 642 S.W.2d 471, 476 (Tex.Crim.App.1982), *citing Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 354 (1974). Point of error seven is sustained.

We now return to Hilliard's fourth point of error which contends the court erred in limiting his tender of evidence offered to rebut the extraneous offense evidence introduced by the State. Hilliard attempted to introduce evidence that he claims was relevant to his claim that he was innocent of the extraneous offense, namely, assaulting Trent. Defense counsel sought to introduce medical records showing Hilliard has serious medical problems including a bad heart valve, high blood pressure, and bad knees; evidence of injuries inflicted on Hilliard by Trent; testimony of Trent's strength and past behavior which would tend to show that she was the first aggressor; and testimony that would support Hilliard's claim that the complainant came to his home in a drunken state, attacked him, and later jumped from his moving vehicle when he tried to take her home, thereby adding to her injuries. The State objected on relevancy grounds and was sustained.

Some of this evidence did come in before the jury. Hilliard was allowed to testify as to his medical problems although he was not allowed to introduce copies of his medical records. He testified about the injuries he suffered the night of the alleged assault, but he was not allowed to show evidence of these injuries to the jury. Hilliard questioned witnesses about Trent's size and build, but never attempted to ask questions about her strength until making his bill of exception. Finally, Hilliard and his brother both gave testimony of other fights between Hilliard and Trent that could have caused the jury to believe she had been the aggressor.

As we discussed under Hilliard's first point of error, the trial court must determine if the evidence is relevant and that ruling will only be reversed by this court if we find an abuse of discretion and subsequent harm. We already found that admitting the evidence of the extraneous offense, in this case the photographs of the unadjudicated underlying assault, was an abuse of discretion that resulted in harm, and we noted that the unadjudicated offense was relied on by the State to a great extent. Most of the testimony presented by the State concerned the assault rather than the retaliation offense. Likewise, the prosecutor placed great emphasis on the assault during her closing arguments and even brought up the defendant's lack of rebuttal evidence. Beyond that, the jury charge made reference to the use of the extraneous offense. Because the extraneous offense was so greatly relied upon by the State, and because of the instruction that the jury could consider the offense even for a limited purpose, we find it was error for the court to disallow Hilliard's evidence thereby restricting him from establishing his defense to the full extent. *See Waddell v. State,* 873 S.W.2d 130 (Tex.App.—Beaumont 1994, no pet. h.). Point of error four is sustained.

Reversed and remanded for new trial.