PD-1619-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/18/2015 11:03:35 AM
Accepted 2/19/2015 10:30:32 AM
ABEL ACOSTA
CLERK

NO. _____

Court of Appeals No. 02-13-00060-CR

TO THE
COURT OF CRIMINAL APPEALS
OF TEXAS

CURTIS ROSCOE STAFFORD
Petitioner,

V.

THE STATE OF TEXAS,
Appellee.

PETITION FOR DISCRETIONARY REVIEW

Paul Francis
State Bar No.  07359600
P.O. Box 13369
1178 West Pioneer Parkway
Arlington TX 76013-6367
(817) 543-2600 Telephone
(817) 460-2236 Facsimile
pfrancis@birch.net E-mail

ATTORNEY FOR PETITIONER,
CURTIS ROSCOE STAFFORD

FILED IN
COURT OF CRIMINAL APPEALS

February 19, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF TRIAL JUDGE, PARTIES TO JUDGMENT OR ORDER, AND COUNSEL

**TRIAL JUDGE:** The Honorable Ruben Gonzalez, judge of the 432nd District Court of Tarrant County, Texas

**APPELLANT:** Curtis Roscoe Stafford

**COURT APPOINTED COUNSEL ON APPEAL:** Paul Francis
1178 W. Pioneer Parkway
Arlington TX 76013

**COUNSEL AT TRIAL:** Mamie B. Johnson
Alicia Johnson
PO Box 5751
Arlington TX 76005

**APPELLEE:** The State of Texas

**COUNSEL ON APPEAL:** Charles Mallin
Assistant District Attorney
Tarrant County Justice Center
401 W. Belknap
Fort Worth TX 76196-0001

**COUNSEL AT TRIAL:** Joe Shannon, Jr./District Attorney[1]
Kevin Harris
Carl J. Lazarus
Lloyd Whelchel
Tarrant County Justice Center
401 W. Belknap
Fort Worth TX 76196-0001

---

1 Sharen Wilson is now the District Attorney

ii

# TABLE OF CONTENTS

IDENTITY OF TRIAL JUDGE, PARTIES TO JUDGMENT OR
ORDER, AND COUNSEL. ...................................................................ii

TABLE OF CONTENTS ...........................................................................iii

INDEX OF AUTHORITIES ........................................................................ v

STATEMENT REGARDING ORAL ARGUMENT .................................... 1

STATEMENT OF THE CASE...................................................................... 1

STATEMENT OF PROCEDURAL HISTORY ........................................... 2

GROUNDS FOR REVIEW (ISSUES)……………………………………...2

The court of appeals committed error by incorrectly applying the law regarding harmless error analysis following non-constitutional error in the following respects:

1.  The court of appeals found that the appellant's testimony which was necessary because of the trial court's erroneous admission of extraneous offense evidence rendered the error harmless.  This conflicts with *Maynard v. State*, 685 S.W.2d 60, 66 (Tex. Crim. App. 1985)  The court misconstrued the scope of the appellant's testimony as going beyond that necessary to respond to the erroneous admission of extraneous offense evidence when in fact it was related to same and fell within the doctrine enunciated in *Maynard*.

2. .The court of appeals considered the testimony of the appellant as negating harm caused by the erroneous admission of extraneous offense evidence. This conflicts with *Maynard* as well.

ARGUMENT  .............................................................................................. 3

PRAYER FOR RELIEF ...................................................................... 11

CERTIFICATE OF SERVICE……………………………………….……13

CERTIFICATE OF COMPLIANCE (word count) ..................................... 13

APPENDIX ....................................................................................... 14

# INDEX OF AUTHORITIES

**Cases**

*Barshaw v. State*, 342 S.W.3d 91 (Tex. Crim. App. 2011)...............................11

*Higginbotham v. State*, 356 S.W.3d 584 (Tex. App.—Texarkana 2011, pet. ref'd) ...........................................................................................................5

*Hilliard v. State*, 881 S.W.2d 917 (Tex. App.—Fort Worth 1994, no pet.) ....8

*Kirby v. State*, 208 S.W.3d 568 (Tex. App.—Austin 2006, no pet.) .........................7

*Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998)..........................................7

*Maynard v. State*, 685 S.W.2d 60 (Tex. Crim. App. 1985) .................. 3, 6, 7, 9

*Morales v. State,* 32 S.W.3d 862 (Tex.Crim.App.2000) ...................................5

*Motilla v. State,* 78 S.W.3d 352 (Tex. Crim. App. 2002) ...................................5

*Perez v. State*, 13-13-00407-CR, 2013 WL 6924046, (Tex. App.—Corpus Christi Dec. 30, 2013, no pet.).............................................................................................7

*Rogers v. State,* 853 S.W.2d 29 (Tex.Crim.App.1993) .........................................7

*Sandoval v. State*, 409 S.W.3d 259 (Tex. App.—Austin 2013, no pet.) . 10, 11

*Sims v. State*, 273 S.W.3d 291 (Tex. Crim. App. 2008)...................................10

**Rules**

Tex.R.App.P. 44.2(b) ....................................................................... 5, 6, 9, 11

Tex.R.App.P. 47.1 .................................................................................11

NO. _____

TO THE
COURT OF CRIMINAL APPEALS
OF TEXAS

CURTIS ROSCOE STAFFORD
Petitioner

V.

THE STATE OF TEXAS
Appellee

## PETITION FOR DISCRETIONARY REVIEW

To the Honorable Court of Criminal Appeals of Texas:

Petitioner, Curtis Roscoe Stafford, submits this petition for discretionary review and requests that the Court consider the following issues:

## I.

### STATEMENT REGARDING ORAL ARGUMENT

Petitioner waives oral argument unless the State is granted oral argument.

## II.

### STATEMENT OF THE CASE

APPELLANT, CURTIS ROSCOE STAFFORD, was indicted for Aggravated Sexual Assault-Threat. (CR 6) On a plea of not guilty (4 RR 12)

1

the jury convicted him. (6 RR 6) (CR 87) The jury assessed punishment at 22 years TDC. (CR 101, 7 RR 33) An appeal was filed. (CR 108, 113) The Court of appeals affirmed the conviction. (Appendix)

## III.

## STATEMENT OF PROCEDURAL HISTORY

The Second Court of Appeals, heard the appeal, assigned case number 02-13-00060-CR.

The judgment (and opinion) of the Second Court of Appeals affirming the trial court was issued November 13, 2014. A copy of same is attached as an Appendix to this Petition. Petitioner's Motion for Rehearing was filed on November 28, 2014. The court of appeals denied the Motion for Rehearing on January 22, 2015.

## IV.

## GROUNDS FOR REVIEW

The court of appeals committed error by incorrectly applying the law regarding harmless error analysis following non-constitutional error in the following respects.

1.      The court of appeals found that the appellant's testimony which was necessary because of the trial court's erroneous admission of extraneous offense evidence rendered the error harmless. This conflicts with *Maynard v.*

2

*State*, 685 S.W.2d 60, 66 (Tex. Crim. App. 1985)  The court misconstrued the scope of the appellant's testimony as going beyond that necessary to respond to the erroneous admission of extraneous offense evidence when in fact it was related to same and fell within the doctrine enunciated in *Maynard*.   (5 RR 110-118, 125-142)

2.      The court of appeals considered the testimony of the appellant as negating harm caused by the erroneous admission of extraneous offense evidence.  This conflicts with *Maynard* as well. (5 RR 110-118, 125-142)

**The Questions for Review:**

1.      Whether the appellant's testimony that was necessary because of the trial court's erroneous admission of extraneous offense evidence rendered the error harmless?

2.      How the scope and content of testimony of the appellant should be evaluated in a harmless error analysis when the appellant was forced to testify after the trial court  erroneously admitted extraneous offense evidence prior to the appellant's taking the stand?

V.

ARGUMENT

Curtis Stafford was charged with committing aggravated sexual assault based on an incident that allegedly occurred on or about January 5, 2011. (CR 6) Trial began February 5, 2013. (3 RR 1)

During the State's case in chief, and prior to Mr. Stafford testifying the state called BC[2] to testify. (5 RR 110) This was done over the objection of the defendant, (5 RR 39-46) and the trial court gave the defendant a running objection.[3] In the presence of the jury BC said that on April 3, 1985 (28 years before the current trial. 5 RR 118) she was working the overnight shift at a convenience store. (5 RR 111) Mr. Stafford came into the store and after talking a bit he pulled a knife, robbed her, and had sex with her. (5 RR 111-115) She said he had threatened with the knife to kill her. (5 RR 114) The 1985 incident resulted in a judgment of guilt for the robbery, but not the allegation of sexual assault. (5 RR 127, 128) The appellant was not being impeached with the prior conviction because he had not testified.

The trial court gave a verbal limiting instruction to the jury. (5 RR 119) BC was not a witness to any of the allegations contained in the current charge. Because of the admission of BC's testimony the defendant testified. (5 RR 120-122)

---

2 The witnesses will be referred to by initials.
3 The rationale for the admission of BC's testimony is set out at 5 RR 42-44 and she testified outside the presence of the jury before the trial court ruled that her testimony would be admitted. (5 RR 25-46)

The court of appeals side-stepped the question of error and affirmed the conviction because there was no harm-because of the "expansive testimony" of the appellant. Opinion page 10.

The admission of extraneous offense evidence is non-constitutional error, reviewable under Tex.R.App.P. 44.2(b). *Higginbotham v. State*, 356 S.W.3d 584, 592 (Tex. App.—Texarkana 2011, pet. ref'd)

Under that standard an appellate court must determine whether the error had a substantial or injurious effect on the jury's verdict. *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App.2000). In assessing the likelihood that the jury's decision was adversely affected by the error, the court considers everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Id.* The court may also consider the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments, and even voir dire, if material to appellant's claim. *Id.* Though not dispositive, the weight of the evidence of the defendant's guilt is a relevant factor in conducting a harm analysis. *Motilla v. State,* 78 S.W.3d 352, 360 (Tex. Crim. App. 2002)

The court of appeals acknowledged the case law that the appellant did not waive error by testifying, but then went on to hold that because his testimony went beyond meeting, rebutting, destroying or explaining the details of a prior alleged offense for which he was never convicted the error was harmless.

According to the court of appeals (pp. 9-10) these are the expansive items of his testimony that made any error harmless:

1.     Drinking beer, using drugs, and seeking prostitutes while on parole.

2.     Attending classes for sex offenders, participating in AA and NA, and thinking he was in anger control classes.

To quote the opinion "… the snapshot of his life at the time of the encounter was that of a life out of control, mired in illicit sex, drugs, and alcohol. It is reasonable to conclude that the jury would be more affected by Appellant's conduct and character at the time of the more recent offense than his conduct twenty-eight years ago."  According to the court of appeals this trumps any damage done by an erroneous admission of a claim of sexual assault occurring 28 years earlier.

The court of appeals failed to properly apply the Tex.R.App.P. 44.2(b) standard as set out in *Morales*, and as applied to the doctrine of *Maynard v. State*, 685 S.W.2d 60, 66 (Tex. Crim. App. 1985).    First of all,

6

the court failed to give proper weight to the fact that the case was based on the uncorroborated testimony of a complaining witness, who admitted at the state's behest, that she was a convicted prostitute.  (4 RR 16-18)  At the time of trial she was even in custody because she failed to stay in contact with state as a witness in the case. (4 RR 19)  Given her credibility her tale was far from compelling.   The defendant, after taking the stand, denied the assault, and contended it was consensual.  (5 RR 137)  It was a swearing match. Although the complaining witness asserted she told her boyfriend, OR[4], when she got home about what happened, the boyfriend never testified in court to confirm this.

Further the court of appeals failed to properly consider that having been forced to take the stand and respond, the appellant was entitled, without rendering the error harmless, to mitigate such inherently prejudicial evidence as best as he could.  See *Maynard v. State*, 685 S.W.2d 60, 66 (Tex. Crim. App. 1985)[5]    This is true even if he confirms the evidence.  As said in *Maynard at* 66 "… we hold that no waiver occurs when, after the admission over objection of *evidence of an extraneous offense,* the defendant

---

4 Another pseudonym.
5 *Maynard* is still the law.  See *Leday v. State*, 983 S.W.2d 713, 718 fn. 9 (Tex. Crim. App. 1998); *Rogers v. State,* 853 S.W.2d 29, 35 (Tex.Crim.App.1993); *Perez v. State*, 13-13-00407-CR, 2013 WL 6924046, at *4 (Tex. App.—Corpus Christi Dec. 30, 2013, no pet.) (Not designated for publication); *Kirby v. State*, 208 S.W.3d 568, 574 (Tex. App.—Austin 2006, no pet.)

7

subsequently testifies to essentially the same facts to which he had earlier objected." Also as stated in *Maynard* at 65 "….. the harmful effect of improperly admitted evidence is not cured by the fact that the defendant sought to meet, destroy, or explain it by the introduction of rebutting evidence." See also *Hilliard v. State*, 881 S.W.2d 917, 920 (Tex. App.—Fort Worth 1994, no pet.) citing *Maynard*.

Having been labeled a sex offender by BC the fact of sex offender counseling was not outside the scope of what he was entitled to talk about under *Maynard*. It was also a showing that regardless of what he did in 1985 he is no longer the person he was then because of counseling and attendance at other programs such as AA, NA or anger counseling. This was in direct response to the testimony of BC.

Despite the court's comment about a life out of control, common sense indicates that proof that an adult male is drinking beer, seeking prostitutes (i.e., consensual sex), or even using drugs, would not cause a jury to consider it as proof he had committed an aggravated sexual assault at gunpoint, or that they would find such testimony of sex, drinking and drugs so abhorrent as to eclipse testimony of a sexual assault and render it harmless. The error in the court's reasoning is that the court of appeals apparently believes that in determining guilt a jury is going to equate bad personal moral behavior in

8

general with the likelihood of commission of a violent crime, so any evidence of bad behavior ameliorates the harm of the extraneous offense evidence. In essence the appellate reasoning is that the defendant harmed himself by testifying more than the original extraneous offense admission did. The harm equivalence underlying the court's opinion simply is not a credible analysis of the impact on the jury of the two competing lines of testimony. Not only is the analysis unreasonable to believe, but in fact, testimony that the appellant frequented prostitutes, far from overshadowing the harm caused by extraneous offense evidence, would aid him with the jury, since it was clear that he knew that for $20 he could have sex. Under those circumstances why would he risk years in prison by using threats of deadly force when $20 would achieve the same thing? His admission to having paid for sex before indicates that he had no problem doing that. His testimony, even if considered on the question of harm, does not overshadow or ameliorate the harm caused by the extraneous offense evidence.

As another consequence of the court's failure to properly apply the Tex.R.App.P. 44.2(b) test, the holding chips away at the Court of Criminal Appeals' *en banc* decision of *Maynard v. State*, 685 S.W.2d 60, 66 (Tex. Crim. App. 1985) *Maynard* effectively carved out from the harmless error review, the evidence the defendant is entitled to present, without such

9

evidence being considered for purposes of establishing harmlessness of the trial court's error.

The fact that his testimony gave any specific information was in fact a trial court-caused additional damage to the appellant, not evidence of lack of harm. This flies in the face of *Maynard*.

The factors in a harmless error analysis are:

1. **Weight of evidence**. It was a swearing match as set out above. The evidence supporting the verdict was the word of an unreliable complaining witness convicted of prostitution, i.e., a crime of moral turpitude.

2. **The character of the alleged error**-remote extraneous offense testimony, which is inherently prejudicial. See *Sims v. State*, 273 S.W.3d 291, 294-95 (Tex. Crim. App. 2008)

3. The jury was given a **written instruction in the charge**, but it allowed consideration of the evidence for purposes other than only the bases for its admission. (5 RR 119, CR 83) Also, an instruction that instructs a jury to consider inadmissible evidence for a limited purpose still instructs a jury to consider inadmissible evidence. *Sandoval v. State*, 409 S.W.3d 259, 288 (Tex. App.—Austin 2013, no pet.)

4. **Jury argument**.-the State argued the 1985 incident to the jury, but went outside the scope of the purported limits on its consideration to make a

character-conforming argument, (5 RR 179) to which the defendant had to respond. (5 RR 183-184)

Under a proper application of the Tex.R.App.P, 44.2(b) analysis that the court of appeals should have employed, at the very least 'grave doubt' as to the error's supposed harmlessness exists and the case should be reversed. *Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011); *Sandoval v. State*, 409 S.W.3d 259, 288 (Tex. App.—Austin 2013, no pet.) (Extraneous offense evidence)

## VI.

## PRAYER FOR RELIEF

Based on the above and foregoing, the Petitioner respectfully requests that the Court of Criminal Appeals grant the Petition for Discretionary Review, and upon consideration of the case to vacate the court of appeals' judgment of affirmance, determine that error and harm has been shown and remand the case to the trial court for a new trial on guilt-innocence and punishment, if needed, or in the alternative upon determining that the court of appeals improperly applied the test for harmless error, determine that the alleged error was not harmless and remand the case to the court of appeals for a determination of error and all other issues necessary to the disposition of the case under Tex.R.App.P. 47.1. In the alternative request is made that

11

the affirmance be set aside and the case remanded to the court of appeals for a proper harmless error analysis.

Petitioner requests all other relief to which he is entitled.

Respectfully submitted,

Law Office of Paul Francis
P.O. Box 13369
1178 W. Pioneer Parkway
Arlington TX 76013-6367
(817) 543-2600 Telephone
(817) 460-2236 Facsimile
pfrancis@birch.net Email

By: /s/ Paul Francis
   Paul Francis
   State Bar No. 07359600

ATTORNEY FOR PETITIONER,
CURTIS ROSCOE STAFFORD

# CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the number of words in this document, as computed in accordance with Tex.R.App.P. 9.4(i) using the Word Count function of Microsoft Word is 2,133.

/s/ Paul Francis
Paul Francis

# CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing was served upon the following persons in accordance with Texas Rule of Appellate Procedure 9.5, on this February 18, 2015.

Charles Mallin
Tarrant County Justice Center
401 W. Belknap
Fort Worth TX 76196-0001

Lisa C. McMinn
State Prosecuting Attorney
P.O. Box 13046
Capitol Station
Austin, Texas 78711

/s/ Paul Francis
Paul Francis

# APPENDIX



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00060-CR

| | | |
|---|---|---|
| Curtis Roscoe Stafford | § | From the 432nd District Court |
| | § | of Tarrant County (1276266D) |
| v. | § | November 13, 2014 |
| | § | Opinion by Justice Gardner |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By _/s/ Anne Gardner_____
    Justice Anne Gardner



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-13-00060-CR

CURTIS ROSCOE STAFFORD            APPELLANT

V.

THE STATE OF TEXAS            STATE

----------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1276266D

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Curtis Roscoe Stafford of aggravated sexual assault and assessed his punishment at twenty-two years' confinement. The trial court sentenced him accordingly and ordered that he serve the sentence concurrently with a prior 1985 conviction to the date of sentencing but consecutively thereafter. Appellant brings a single issue on appeal, arguing that

---

[1]*See* Tex. R. App. P. 47.4.

the trial court abused its discretion and reversibly erred by admitting during the guilt phase of his trial not only evidence of the fact of the 1985 aggravated robbery conviction but also details of the underlying facts that include evidence of an aggravated sexual assault that did not result in conviction. We affirm.

## Background

The evidence in this case is essentially a swearing match.

### The Complainant's Version

The complainant testified that she walked to a convenience store on the January night of the alleged offense and that she asked Appellant for a ride home. Instead of taking her home, he took her to a road that ended at an iron gate with a horseshoe and longhorn design. He stopped the car and got out, saying he had to "go to the bathroom." Instead, he came around to the passenger seat, got into the car, and grabbed her arm. The complainant testified that Appellant ordered her to perform fellatio and pulled out a black .380 Kel-Tec handgun. She complied with his orders. Then he ordered her to pull down her pants and get on top of him. When she complied with that order, he penetrated her vagina with his penis.

The complainant testified that while he assaulted her, Appellant told her that he ought to kill her. She asked him if she could pray. After the assault, he instructed her to clean him up and not to get anything on his clothes. He wanted her to use her mouth, but instead, she used her underwear, pink panties. When she finished cleaning up, she threw the panties out the car window. Appellant

2

drove her to a church and told her to get out and walk in front of the car. Instead, when she got out of the car, she ran until she arrived at home. Her boyfriend was waiting for her, and when he saw her, he asked her what had happened.

The complainant took a shower and went to bed, although her boyfriend told her that she should call the police and go to the hospital. The next morning, she went to the hospital, where medical personnel performed a rape exam. She also spoke with the police.

### Appellant's Version

Appellant testified that at around 9:00 p.m. on a January night, he got off work at a car lot in Arlington where he had been employed for about a year and a half. He drove down Riverside Drive, saw a convenience store, and stopped to get some cigarettes. When he got out of the car, the complainant smiled at him. After buying cigarettes, he got back in his car, lit a cigarette, and took a drink of beer. The complainant was still standing there. Appellant rolled down the window and asked her what she was doing. She replied that she wanted to have some fun. He asked her what kind of fun she wanted to have. She did not reply but got into the car. Appellant started driving south on Riverside. The complainant told him to make a right and then a left, and he followed her directions. Appellant stopped the car, and he and the complainant talked for a few minutes. Then, he got out of the car to use the restroom, got back in the car on the driver's side, and pulled a pipe out. The complainant asked him why he was getting in on the driver's side, and he asked her what she meant. She said,

3

"We fixing to take care of business." He got out and got back in the car on the passenger's side. The complainant suggested using crack. She had her own crack pipe, and they both smoked crack. He also offered her some beer, but she said that she did not like beer.

Appellant testified that the complainant got completely naked, he pulled his pants down, and they started having consensual sex. When she was pulling her pants down, he heard something fall but did not pay any attention at that time. While they were having sex, the complainant reached back and tried to pick it up. That was when he saw that it was a small gun. She grabbed it as though she was going to pull it around and point it at him. He pulled her hand back, held her wrist with his right hand, and clutched the gun in his left hand. He threw it under the driver's seat and asked her what she was doing with the gun. He asked if she was trying to rob him. The complainant replied that she was not. At that time, they were finished having sex, and he told her to put on her clothes.

The complainant used her panties to clean up, threw the panties out the car window, and pulled her pants on. She said that she threw her panties away because she did not want her boyfriend to know that she had been out having sex. Appellant paid her $20 before she left. He put it on the dashboard on the passenger side, and she picked it up. The complainant told Appellant that she wanted to be dropped off at a nearby church, and he took her there and left her.

Appellant testified that he made no threats to the complainant at all. He said that he did not remember her crying at all and that she had no reason to cry.

4

He insisted that they had both agreed to have sex and to use drugs. He denied that he had raped her. He threw the gun away in a field across from a motel at an old wrecking yard, Aztec Wrecking Service.

## Extraneous Offense

During the State's case in chief, and prior to Appellant testifying, the State called B.C. to testify over Appellant's objection. The trial court gave him a running objection. In the presence of the jury, B.C. testified that on April 3, 1985, she was working at a convenience store as a cashier from 10:00 p.m. until 7:00 a.m. Appellant came into the store about 3:00 a.m., and after talking a bit, he pulled a knife and said that he was going to rob her. He told B.C. to hand him the money from the cash register, and she did. But instead of leaving, he stayed. When a customer came in, Appellant acted like he was her boyfriend. After the customer left, Appellant threatened to kill her with the knife. He made B.C. lie down on the floor behind the counter and sexually assaulted her.

When another customer came in about an issue with the gas pump, B.C. had to go outside, and Appellant went with her. At the first opportunity, B.C. ran across the street to the closest place she could find that was open and asked them to call the police.

This incident occurred almost twenty-eight years before the trial in the instant case and resulted in a judgment of guilt to a charge of aggravated robbery. Appellant was released from the penitentiary on July 9, 2009. The trial court instructed the jury to consider the evidence of the extraneous offense for

"motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" only.

## Analysis

In his sole issue, Appellant challenges the trial court's admission of evidence concerning his 1985 aggravated robbery conviction, including details of a related aggravated sexual assault that did not result in conviction. The State argues forfeiture, challenging the sufficiency of the objection, contending that Appellant failed to object when the evidence was offered and that by taking the stand and testifying concerning the 1985 offense, he forfeited any prior objection to testimony about the offense. The State is incorrect.

Outside the presence of the jury, Appellant objected to testimony about the 1985 offense under rule 403 on the grounds that "the prejudicial effect far outweighs any probative value." *See* Tex. R. Evid. 403. He also objected under rule 404(a) that the evidence was being offered to show character conformity and that the offense occurred 28 years before, which we treat, as the trial judge obviously did, as a remoteness objection. *See* Tex. R. Evid. 404(a). Further, he objected that although he was convicted of the prior aggravated robbery, he was not convicted of the prior aggravated sexual assault. Rather, that offense was dismissed under section 12.45 of the penal code as part of the plea bargain agreement. *See* Tex. Penal Code Ann. § 12.45 (West 2011). All these objections were presented to the trial judge, who overruled them and granted the defense a running objection sua sponte. Thus, we conclude Appellant has

6

preserved this issue for our review.  *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1); *Sattiewhite v. State*, 786 S.W.2d 271, 283 n.4 (Tex. Crim. App. 1989), *cert. denied*, 498 U.S. 881 (1990) (explaining that "as long as the running objection constituted a timely objection, stating the specific grounds for the ruling, the movement desired the court to make (if the specific grounds were not apparent from the context of the running objection) then the error should be deemed preserved by an appellate court").

To be convicted of sexual assault, Appellant must have engaged in the conduct without the complainant's consent.  A complainant's lack of consent is the essence of the offense of sexual assault.  *See Rubio v. State*, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980).  "When the defensive theory of consent is raised, a defendant necessarily disputes his intent to do the act without the consent of [the complainant].  His intent is thereby placed in issue."  *Id.*; *see Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005) ("In this case, lack of consent is an element of the alleged offense and was hotly disputed.  The extraneous-offense evidence in this case was admitted only after appellant testified that his sexual intercourse with the complainant was consensual." (citations omitted)).

The trial court found that Appellant had opened the door to evidence of the 1985 sexual assault and robbery through cross-examination of the complainant by challenging the complainant's credibility, by suggesting that she brought the weapon, and by suggesting that she is a prostitute who was not sexually

7

assaulted but rather engaged in consensual sexual activity. The trial court also held that the 1985 offenses were not too remote because Appellant was released from prison less than ten years earlier, was still on parole at the time of the offense, and was currently in jail because his parole had been revoked.

The Texas Court of Criminal Appeals has explained the interplay of Rules of Evidence 403 and 404:

> TEX. R. EVID. 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 403 provides that even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, Rule 404(b) also provides that extraneous offense evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" This list is illustrative, rather than exhaustive, and extraneous-offense evidence may be admissible when a defendant raises a defensive issue that negates one of the elements of the offense. Thus, a party may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact. "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court."

*Martin*, 173 S.W.3d at 466 (citations omitted).

The case now before this court does not involve a distinctive course of conduct, and the 1985 aggravated sexual assault is similar to the current allegations only in that a gas station with convenience store was involved. There is no suggestion that the sexual assault the complainant testified to was an

8

accident. But we do not have to determine that the evidence of the 1985 sexual assault was not offered for character conformity. *See* Tex. R. App. 47.1. Instead, we first address the effect of Appellant's decision to take the stand and subject himself to impeachment.

As the Texas Court of Criminal Appeals has explained,

> The general rule is that error regarding improperly admitted evidence is waived if that same evidence is brought in later by the defendant or by the State without objection. However, error is not waived when the evidence is brought in later in an effort to meet, rebut, destroy, deny or explain the improperly admitted evidence.

*Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993) (citations omitted). After the trial court admitted the details of the 1985 offense, Appellant's position was that the evidence was improperly admitted and that he needed to take the stand to meet, rebut, destroy, and explain that evidence. He did take the stand and subjected himself to impeachment by proof of his prior felony conviction. While the fact of a prior felony conviction may be admissible, the details of the offense normally are not. *Murphy v. State*, 587 S.W.2d 718, 722 (Tex. Crim. App. 1979). But Appellant did not merely meet, rebut, destroy, and explain the details of the 1985 offense. He also testified to many recent additional offenses and bad acts, including fifteen to twenty prostitution offenses by employing the services of prostitutes, drinking beer, using drugs, and seeking prostitutes while on parole. Appellant additionally testified that he was in classes for sex offenders, he participated in AA and NA, and he thought he was in anger control classes.

9

Without deciding whether the trial court abused its discretion by admitting details of the 1985 sexual assault, we hold that any error resulting from the admission was harmless in light of Appellant's expansive testimony. Appellant himself testified on direct examination that he was in counseling as a sex offender when he encountered the complainant in the instant case. That alone, in the context of this trial, opens the door to questions about his history of sex offenses. Additionally, implicit in the fact of treatment as a sex offender is the inference that Appellant is a sex offender and was a sex offender before encountering the complainant. Also, the snapshot of his life at the time of the encounter was that of a life out of control, mired in illicit sex, drugs, and alcohol. It is reasonable to conclude that the jury would be more affected by Appellant's conduct and character at the time of the more recent offense than his conduct twenty-eight years ago. Further, his strategy of open honesty with the jury appears to have been reasonably successful. Although the jury was instructed to assess Appellant's punishment at fifteen to 99 years or life, the jury chose to assess a twenty-two-year sentence, which is in the lower range. Finally, the trial court issued a standard extraneous offense limiting instruction. Given our review of the record as a whole, we conclude that any error was harmless. *See* Tex. R. App. P. 44.2(b); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *King v. State*, 953 S.W.2d 266, 271

10

(Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

Appellant also argues in a subissue that a rule that vigorous cross-examination of the complainant opens the door to otherwise inadmissible extraneous acts of misconduct is an impermissible limitation of his Sixth Amendment right of cross-examination. Appellant raises this constitutional complaint for the first time on appeal. To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009) (requiring timely objection to preserve a complaint for appellate review). Further, the complaint on appeal must be the same as that presented in the trial court or the error is forfeited. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). Appellant therefore forfeited this complaint.

## Conclusion

Because any error in admitting details of the 1985 robbery and sexual assault was harmless and Appellant did not preserve his constitutional complaint, we overrule his sole issue and affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

11

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 13, 2014